David C. Kiernan, Bar No. 215335
dkiernan@jonesday.com
Margaret A. Ward, Bar No. 304435
maward@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, California  94104
Telephone:     +1.415.626.3939
Facsimile:     +1.415.875.5700

Jeffrey A. LeVee, Bar No. 125863
jlevee@jonesday.com
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, California  90071
Telephone:     +1.213.489.3939
Facsimile:     +1.213.243.2539

Attorneys for Defendant John Muir Health

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION and STATE OF CALIFORNIA,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>JOHN MUIR HEALTH and TENET HEALTHCARE CORPORATION,<br><br>　　　　　　Defendants. | Case No. 5:23-cv-05952-PCP<br><br>**ANSWER TO COMPLAINT FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION PURSUANT TO SECTION 13(B) OF THE FEDERAL TRADE COMMISSION ACT**<br><br>Judge:　Hon. P. Casey Pitts |

## RESPONDENT JOHN MUIR HEALTH'S ANSWERS AND AFFIRMATIVE DEFENSES TO COMPLAINT

　　　　John Muir Health ("John Muir") is a local non-profit based in northern Contra Costa County.  Surrounded by much larger health systems—including Kaiser Permanente ("Kaiser"), Sutter Health ("Sutter"), and Stanford Health Care ("Stanford")—John Muir's two hospitals must compete to attract patients and add value to commercial payors.  To that end, John Muir invests

tens of millions of dollars each year to improve the quality of its care.  This commitment has paid off.  Three of its service lines are ranked among the top 40 nationally.  Its two hospitals rank #2 and #3 overall in the San Francisco Bay Area.  And its nursing services and foundation-based physician network hold the highest rating from their respective peer groups.

John Muir currently owns 49% of San Ramon Regional Medical Center ("SRRMC"), a small community hospital in the southern part of Contra Costa County.  John Muir acquired its 49% ownership interest in SRRMC in 2013.  Although that transaction was not reportable pursuant to the Hart-Scott-Rodino Act, the FTC conducted an extensive investigation and permitted John Muir to become a co-owner of SRRMC.  John Muir and Tenet Healthcare Corporation ("Tenet") entered into the joint venture with the shared goals of expanding its service offerings and better integrating SRRMC into the local physician community.

Notwithstanding some initial success, including the launch of a robotic surgery program, SRRMC is currently struggling.  There are only two employed physicians at SRRMC and the center has very limited service offerings.  It cannot fill its beds—70% of which sit empty every day—and the vast majority of its patients are admitted through the Emergency Room ("ER").  The very low number and proportion of non-ER patients at SRRMC means that patients who have a choice are consistently choosing to seek care elsewhere.  Although SRRMC has achieved positive operating cash flows in recent years, having nearly 70% of its beds empty each day is not sustainable for any hospital and is a massive lost opportunity for the local community.  SRRMC badly needs an infusion of capital to right the ship and compete with Kaiser, Sutter, and Stanford.  But its majority owner, Tenet, cannot justify making the needed investments.

The proposed transaction would solve this problem.  By acquiring Tenet's 51% share, John Muir would become SRRMC's sole owner.  Unlike Tenet, John Muir is committed to make the investments necessary to ensure SRRMC's long-term viability and attract patients from rival systems.  These investments include renovating the facility to comply with California seismic requirements, adding needed clinical service lines, redoubling efforts to recruit and retain staff, and bringing SRRMC onto Epic, the electronic health record platform used by most Bay Area

hospitals and physicians.  The investments will make SRRMC more attractive to physicians; improve patient outcomes through better coordination of care; and protect the facility (and all who use it) from future seismic events.  Ultimately, these investments will help SRRMC compete for the many local patients who currently seek care at other area hospitals.  The proposed transaction thus offers significant benefits to the greater San Ramon community.

The transaction presents no risk to competition.  Although John Muir and SRRMC are both located in Contra Costa County, they compete only minimally.  Their respective 75% service areas (the zip codes closest to each party that account for 75% of that party's inpatient admissions) overlap in only a single zip code, and even then just barely.  That zip code accounts for only 2% of John Muir's privately insured patients and only 12% of SRRMC's.  By contrast, Kaiser, Sutter, and Stanford are the key competitors for both John Muir and SRRMC.  Those larger health systems overlap substantially with the parties' 75% service areas and vigorously compete against both John Muir and SRRMC for patients.  They have invested in their facilities, and their medical groups attract patients from each other and from the parties.  The parties' ordinary course documents reflect this constant pressure from Kaiser, Sutter, and Stanford—and very little competition with each other.

Additionally, Plaintiffs' illustration of the competitive landscape in Paragraph 32 of their Complaint is misleading insofar as it excludes *eight* competing hospitals that are located in the same geography.  Several other hospitals—including Kaiser, Sutter, and Stanford—operate in the area shown on Plaintiffs' map, all of which compete against Defendants today and will continue to compete against John Muir post-closing.  *Compare* Figure 1 (Plaintiffs' Map) *with* Figure 2 (Plaintiffs' Map, including all hospitals in the area), below.




Figure 1: Plaintiffs' Complaint Map of Highway I-680 and Defendants' Hospital Locations

Figure 2: Plaintiffs' Complaint Map, But Updated to Show All Hospitals in the Area

"In determining whether to grant a preliminary injunction under section 13(g) [of the FTC Act], the court must 1) determine the likelihood that the Commission will ultimately succeed on the merits and 2) balance the equities." *Fed. Trade Comm'n v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1165 (9th Cir. 1984).  In evaluating the first prong, the Court "must exercise its 'independent' judgement and evaluate the FTC's case and evidence on the merits." *Fed. Trade Comm'n v. Microsoft Corp.*, No. 23-CV-02880-JSC, 2023 WL 4443412, at *8 (N.D. Cal. July 10, 2023) (quoting *Fed. Trade Comm'n v. Meta Platforms Inc.*, No. 5:22-CV-04325-EJD, 2022 WL 16637996, at *5 (N.D. Cal. Nov. 2, 2022).  "Courts require such a rigorous analysis because 'the issuance of a preliminary injunction prior to a full trial on the merits is an extraordinary and drastic remedy.  This is particularly true in the acquisition and merger context, because, as a result of the short life-span of most tender offers, the issuance of a preliminary injunction blocking an acquisition or merger may prevent the transaction from ever being consummated.'" *Id.*, at *8 (quoting *Warner Commc'ns Inc.*, 636 F.2d at 1343).  Here, the FTC cannot show that it is likely to ultimately succeed on the merits for at least three reasons:

*First*, the government fails to define a valid relevant market. "The relevant market consists of two components, the 'product market,' and the 'geographic market.'" *California v. Sutter Health Sys.*, 130 F. Supp. 2d 1109, 1120 (N.D. Cal 2001) (quoting *United States. v. Marine Bancorp.*, 418 U.S. 602, 618 (1974)). "A properly defined product market consists of all goods or services 'reasonably interchangeable by consumers for the same purposes.'" *Id.* at 1119 (quoting *United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377, 395 (1956)). A properly defined geographic market includes, at minimum, the hospitals located in the "geographic area 'to which consumers can practically turn for alternative sources of the product and in which the antitrust defendants face competition.'" *Id.* at 1120. This area must be "based on the 'commercial realities of the industry'" and "include[] potential suppliers who can easily offer consumers a suitable alternative to the defendant's services." *Id.*

Here, a properly defined market must include Kaiser, Sutter, and Stanford. When those competitors are included, the parties' market shares are beneath the thresholds required for a presumption of harm. To avoid this outcome, the government proposes a gerrymandered geographic market that excludes multiple competing hospitals, as well as large portions of the parties' 75% service areas. The so-called "I-680 Corridor" market has no basis in commercial reality, is contradicted by the parties' ordinary course documents, and violates the FTC's own merger guidelines. The FTC's gerrymandered market is reason alone to reject the government's claims.

*Second*, the government has no credible theory of harm to competition. By portraying John Muir as an 800-pound gorilla "known for charging high prices," the government suggests John Muir will use its "leverage" to negotiate higher prices for SRRMC. Although the government is wrong about John Muir's prices—relying on an inaccurate, flawed, and outdated third-party study—that allegation is a red herring. The question in a merger challenge is whether the parties compete closely with one another, and therefore whether John Muir's prices are constrained by SRRMC, or vice-versa. Hence, the government must show that SRRMC's supposedly lower prices are the result of competition with John Muir. The government must also

show that other local rivals, including Kaiser, Sutter, and Stanford, will not constrain the parties post-closing.  It cannot do either.

*Third*, and importantly, the proposed transaction will benefit the community of San Ramon and promote competition against Kaiser, Sutter, Stanford, and others.  The suggestion in the complaint that Tenet will invest to improve SRRMC's quality, but John Muir will not, is exactly backward.  To date, Tenet has chosen (over John Muir's objections) *not* to make investments necessary to expand service lines and improve quality at SRRMC.  By contrast, over the next decade John Muir will invest over $100 million in SRRMC, which will greatly benefit the local community, from the perspective of both patients and employees.  More patients will receive the care they need closer to home.  The facility will employ more people, including nurses, other care givers, and support staff.

In this regard, John Muir's track record speaks for itself.  John Muir built its first hospital in Walnut Creek in 1965.  Six decades and hundreds of millions of dollars later, that hospital now offers a wide range of specialty services, reducing the need for local patients to travel further from home for specialized treatment.  More recently, in the late-1990s, John Muir acquired a struggling community hospital in nearby Concord.  That facility was underutilized.  It suffered from a lack of resources and a poor reputation.  Now, almost three decades later, John Muir-Concord is thriving.  Like its sister facility, it consistently operates at or near capacity.  And, like its sister facility, it offers a wide range of specialty services that help keep healthcare local.  If and when this transaction closes, John Muir will do what it takes to ensure a similar outcome at SRRMC.

This transaction offers much to the San Ramon community and presents no risk to competition whatsoever.  The Court should deny the request for preliminary relief.

## NATURE OF THE CASE

1.  John Muir admits that it intends to acquire the remaining 51% interest in San Ramon Regional Medical Center ("SRRMC").  John Muir denies that it is one of the largest and most expensive hospital systems in Northern California.  The remaining allegations set forth in

- 6 -

Paragraph 1 constitute legal conclusions to which no response is required. To the extent a response is required, John Muir denies those allegations.

2.  John Muir admits that it owns and operates the Walnut Creek and Concord Medical Centers, where it provides inpatient GAC services. John Muir denies that the John Muir hospitals are known for charging high prices and is the most costly system in the nation. John Muir lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 2, and therefore denies them.

3.  John Muir denies the allegations set forth in Paragraph 3.

4.  John Muir admits that Tenet currently operates SRRMC. John Muir also admits that John Muir's Walnut Creek hospital provides high-quality care, and that SRRMC sits approximately 14 miles south of John Muir's Walnut Creek hospital. John Muir denies the remaining allegations set forth in Paragraph 4.

5.  John Muir denies the allegations set forth in Paragraph 5.

6.  John Muir lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 6, and therefore denies them.

7.  John Muir lacks knowledge or information sufficient to form a belief as to the allegations set forth in the second sentence of Paragraph 7, and therefore denies them. The remaining allegations set forth in Paragraph 7 constitute legal conclusions to which no response is required. To the extent a response is required, John Muir denies the allegations.

8.  John Muir admits that the parties have stipulated to entry of a temporary restraining order under which Defendants cannot consummate the Acquisition until after 11:59 p.m. Eastern Time on the fifth business day after the Court rules on the Plaintiffs' request for a preliminary injunction or until a date set by the Court, whichever is later. John Muir denies the remaining allegations set forth in Paragraph 8.

9.  John Muir denies the allegations set forth in Paragraph 9.

## JURISDICTIONAL STATEMENT

### Jurisdiction

10. John Muir admits the allegations set forth in Paragraph 10.

11. John Muir admits that Plaintiffs correctly quoted an excerpt from Section 13(b) of the FTC Act, 15 U.S.C. § 53(b).

12. John Muir admits the allegations set forth in Paragraph 12.

13. John Muir admits that Plaintiffs bring this action for a preliminary injunction under Section 16 of the Clayton Act, 15 U.S.C. § 26, and Section 7 of the Clayton Act, 15 U.S.C. § 18. The remaining allegations set forth in Paragraph 13 constitute legal conclusions to which no response is required. To the extent a response is quired, John Muir denies those allegations.

### Venue

14. John Muir admits the allegations set forth in Paragraph 14.

### Divisional Assignment

15. John Muir denies the allegations set forth in Paragraph 15, to the extent that this matter has been transferred to the San Jose Division. John Muir otherwise admits the allegations set forth in Paragraph 15.

## THE PARTIES

16. John Muir lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 16, and therefore denies them.

17. John Muir lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 17, and therefore denies them.

18. John Muir admits that in 2013, Tenet transferred a 49% non-controlling interest in San Ramon Regional Medical Center, LLC to John Muir. John Muir lacks knowledge or information sufficient to form a belief as to the remaining allegations set forth in Paragraph 18, and therefore denies them.

19. John Muir admits it is a California non-profit corporation headquartered in Walnut Creek, California, and that it operates two hospitals (Walnut Creek Medical Center and Concord

1  Medical Center). John Muir admits it holds a 49% non-controlling interest in San Ramon
2  Regional Medical Center, LLC. John Muir lacks knowledge or information sufficient to form a
3  belief as to the allegations set forth in the rest of Paragraph 19, and therefore denies them.

### THE PROPOSED ACQUISITION

20. John Muir admits the allegations set forth in Paragraph 20.

21. John Muir denies the allegations set forth in Paragraph 21, to the extent the parties agreed to entry of a temporary restraining order under which Defendants cannot consummate the Acquisition until after 11:59 p.m. Eastern Time on the fifth business day after the Court rules on the Plaintiffs' request for a preliminary injunction or until a date set by the Court, whichever is later.

### COMPETITION BETWEEN HOSPITALS BENEFITS PATIENTS

22. John Muir admits that hospitals negotiate contracts with health plans, and that these contracts include reimbursement rates for services rendered to a health plan's enrollees. John Muir lacks knowledge or information sufficient to form a belief as to the remaining allegations set forth in Paragraph 22, and therefore denies them.

23. John Muir lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 23, and therefore denies them.

24. John Muir lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 24, and therefore denies them.

25. John Muir lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 25, and therefore denies them.

26. John Muir lacks knowledge or information sufficient to form a belief as to the allegations set forth in the first sentence of Paragraph 26, and therefore denies them. The remaining allegations set forth in Paragraph 26 constitute legal conclusions to which no response is required. To the extent a response is required, John Muir denies those allegations.

27. John Muir lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 27, and therefore denies them.

28. The allegations set forth in the final sentence of Paragraph 28 constitute legal conclusions to which no response is required. To the extent a response is required, John Muir denies those allegations. John Muir lacks knowledge or information sufficient to form a belief as to the remaining allegations set forth in Paragraph 28, and therefore denies them.

## THE PROPOSED ACQUISITION WILL ELIMINATE DIRECT COMPETITION BETWEEN JOHN MUIR AND SRRMC

29. John Muir lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 29, and therefore denies them.

30. John Muir denies the allegations set forth in the first sentence of Paragraph 30. John Muir lacks knowledge or information sufficient to form a belief as to the allegations set forth in the second through seventh sentences of Paragraph 30, and therefore denies them. John Muir also denies the allegations set forth in the final sentence of Paragraph 30.

31. John Muir lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 31, and therefore denies them.

32. John Muir admits that the image in Paragraph 32 appears to be a map that purports to show the location of three hospitals relative to a small portion of I-680. John Muir denies that this map is a fair or accurate representation of hospitals that are or could be competitors to John Muir or SSRMC. John Muir denies the remaining allegations set forth in Paragraph 32.

33. John Muir denies the allegations set forth in Paragraph 33.

34. John Muir denies the allegations set forth in Paragraph 34.

35. John Muir lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 35, and therefore denies them.

36. John Muir denies the allegations set forth in Paragraph 36.

37. John Muir denies the allegations set forth in Paragraph 37.

38. John Muir lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 38, and therefore denies them.

39. John Muir lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 39, and therefore denies them.

40. John Muir lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 40, and therefore denies them.

41. John Muir lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 41, and therefore denies them.

42. John Muir denies the allegations set forth in Paragraph 42.

43. The allegations set forth in Paragraph 43 constitute legal conclusions to which no response is required.  To the extent a response is required, John Muir denies the allegations.

## THE PROPOSED ACQUISITION WILL SIGNIFICANTLY INCREASE CONCENTRATION IN A HIGHLY CONCENTRATED MARKET

44. The allegations set forth in Paragraph 44 constitute a legal conclusion to which no response is required. To the extent a response is required, John Muir denies the allegations.

### The Relevant Service Market: Inpatient GAC Services Sold To Commercial Insurers And Their Enrollees

45. The allegations set forth in Paragraph 45 constitute legal conclusions to which no response is required. To the extent a response is required, John Muir denies those allegations.

46. The allegations set forth in Paragraph 46 constitute a legal conclusion to which no response is required.  To the extent a response is required, John Muir denies the allegations.

47. The allegations set forth in Paragraph 47 constitute a legal conclusion to which no response is required.  To the extent a response is required, John Muir denies the allegations.

48. The allegations set forth in Paragraph 48 constitute legal conclusions to which no response is required.  To the extent a response is required, John Muir denies those allegations.

49. The allegations set forth in Paragraph 49 constitute legal conclusions to which no response is required.  To the extent a response is required, John Muir denies those allegations.

50. The allegations set forth in Paragraph 50 constitute legal conclusions to which no response is required. To the extent a response is required, John Muir denies those allegations.

51. The allegations set forth in Paragraph 51 constitute legal conclusions to which no response is required. To the extent a response is required, John Muir denies those allegations.

52. The allegations set forth in Paragraph 52 constitute legal conclusions to which no response is required. To the extent a response is required, John Muir denies those allegations.

**The Relevant Geographic Market: The I-680 Corridor**

53. The allegations set forth in the first sentence of Paragraph 53 constitute legal conclusions to which no response is required. To the extent a response is required, John Muir denies those allegations. John Muir also denies the allegations set forth in the final sentence of Paragraph 53.

54. John Muir denies the allegations set forth in Paragraph 54.

55. John Muir lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 55, and therefore denies them.

56. The allegations set forth in Paragraph 56 constitute legal conclusions to which no response is required. To the extent a response is required, John Muir denies those allegations.

57. John Muir denies the allegations set forth in the first sentence of Paragraph 57. The remaining allegations set forth in Paragraph 57 constitute legal conclusions to which no response is required. To the extent a response is required, John Muir denies those allegations.

**The Proposed Acquisition Leads To A Presumptively Unlawful Increase In Concentration**

58. The allegations set forth in Paragraph 58 constitute a legal conclusion to which no response is required. To the extent a response is required, John Muir denies the allegations.

59. John Muir lacks knowledge or information sufficient to form a belief as to the allegations set forth in the first sentence of Paragraph 59, and therefore denies them. John Muir denies the remaining allegations set forth in Paragraph 59, except that John Muir admits that in

1996, John Muir acquired the Mount Diablo Medical Center, which now operates as John Muir's Concord Medical Center.

60. John Muir denies the allegations set forth in the first sentence of Paragraph 60. John Muir lacks knowledge or information sufficient to form a belief as to the remaining allegations set forth in Paragraph 60, and therefore denies them.

61. John Muir lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 61, and therefore denies them.

62. John Muir lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 62, and therefore denies them.

63. John Muir denies the allegations set forth in Paragraph 63.

64. The allegations set forth in Paragraph 64 constitute legal conclusions to which no response is required. To the extent a response is required, John Muir denies those allegations.

65. The allegations set forth in Paragraph 65 constitute legal conclusions to which no response is required. To the extent a response is required, John Muir denies those allegations.

66. The allegations set forth in Paragraph 66 constitute legal conclusions to which no response is required. To the extent a response is required, John Muir lacks knowledge or information sufficient to form a belief as to those allegations, and therefore denies them.

## LACK OF COUNTERVAILING FACTORS

67. The allegations set forth in Paragraph 67 constitute legal conclusions to which no response is required. To the extent a response is required, John Muir denies those allegations.

68. John Muir admits that the FTC quoted from John Muir's Response to Specification 24 of the FTC's Request for Additional Information ("Second Request") in alleging that in California, building a 150-bed inpatient hospital would likely take at least seven years from start to finish. John Muir further responds that the FTC's quotation is taken out of context and is misleading. The Response to Specification 24 speaks for itself. John Muir denies the remaining allegations set forth in Paragraph 68.

69. John Muir admits that construction of a new hospital includes high costs and significant financial risks, but they vary depending on the circumstances. John Muir denies the remaining allegations set forth in Paragraph 69.

70. John Muir lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 70, and therefore denies them.

71. The allegations set forth in Paragraph 71 constitute a legal conclusion to which no response is required. To the extent a response is required, John Muir denies the allegations.

## LIKELIHOOD OF SUCCESS ON THE MERITS, BALANCE OF EQUITIES, AND NEED FOR RELIEF

72. The allegations set forth in Paragraph 72 constitute legal conclusions to which no response is required. To the extent a response is required, John Muir denies those allegations.

73. The allegations set forth in Paragraph 73 constitute legal conclusions to which no response is required. To the extent a response is required, John Muir denies those allegations.

74. John Muir denies the allegations set forth in Paragraph 74.

75. John Muir denies that Plaintiffs are entitled to any relief and otherwise denies the allegations set forth in Paragraph 75.

## AFFIRMATIVE AND OTHER DEFENSES

John Muir asserts the following defenses, without assuming the burden of proof on such defenses that would otherwise rest with Plaintiffs:

### FIRST DEFENSE

The Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

Granting the relief sought is contrary to the public interest.

### THIRD DEFENSE

Granting the relief sought is contrary to the balance of the equities.

### FOURTH DEFENSE

The alleged relevant service market definition fails as a matter of law.

**FIFTH DEFENSE**

The alleged relevant geographic market definition fails as a matter of law.

**SIXTH DEFENSE**

The Complaint fails to allege harm to competition.

**SEVENTH DEFENSE**

The Complaint fails to allege harm to any consumers.

**EIGHTH DEFENSE**

The Complaint fails to allege harm to consumer welfare.

**NINTH DEFENSE**

Any purported alleged harm to potential competition is not actionable.

**TENTH DEFENSE**

The proposed acquisition will be procompetitive.  The acquisition will result in substantial merger-specific efficiencies, cost synergies, quality-of-care improvements, and other procompetitive effects that will directly benefit consumers.  These benefits greatly outweigh any and all proffered anticompetitive effects.

John Muir is committed to making substantial and significant investments in SRRMC to benefit the local community, including investing over $100 million in facility renovations, infrastructure upgrades, adding necessary clinical service lines, expanding medical staff recruitment and retainment efforts, extending community health programming to SRRMC, and converting SRRMC to the EHR system used by most Bay Area hospitals and physicians (Epic). With the Proposed Acquisition, SRRMC will provide John Muir with the scale necessary to compete with larger rivals in the area, and John Muir can engage in a comprehensive integration that it could not through its joint venture with Tenet. The Proposed Acquisition represents an important opportunity to realize critical benefits that will improve quality of, and enhance access to, care for patients residing in and around John Muir.

## DEFENSES INCORPORATED BY REFERENCE

John Muir incorporates by reference the affirmative defenses put forth by Tenet in its Answer to the Plaintiffs' Complaint.

## RESERVATION OF RIGHTS TO ASSERT ADDITIONAL DEFENSES

John Muir has not knowingly or intentionally waived any applicable defenses, and they reserve the right to assert and rely upon other applicable defenses that may become available or apparent throughout the course of the action. John Muir reserves the right to amend, or seek to amend, their answer or affirmative defenses.

## NOTICE OF CONTEMPLATED RELIEF

WHEREFORE, John Muir respectfully requests that the Court enter judgment in its favor as follows:

A. That the Complaint be dismissed with prejudice;

B. That none of the Complaint's contemplated relief issue to the Plaintiffs;

C. That costs incurred in defending against this action be awarded to John Muir; and

D. That any and all other relief as the Court may deem just and proper be awarded to John Muir.

| | | |
|---|---|---|
| 1 | Dated: December 8, 2023 | JONES DAY |
| 2 | | |
| 3 | | By: */s/ David C. Kiernan* |
| 4 | | David C. Kiernan, Bar No. 215335 |
| 5 | | dkiernan@jonesday.com<br>Margaret A. Ward, Bar No. 304435 |
| 6 | | maward@jonesday.com<br>JONES DAY |
| 7 | | 555 California Street, 26th Floor<br>San Francisco, California  94104 |
| 8 | | Telephone:     +1.415.626.3939<br>Facsimile:      +1.415.875.5700 |
| 9 | | Jeffrey A. LeVee, Bar No. 125863 |
| 10 | | jlevee@jonesday.com<br>JONES DAY |
| 11 | | 555 South Flower Street, 50th Floor<br>Los Angeles, California  90071 |
| 12 | | Telephone:     +1.213.489.3939<br>Facsimile:      +1.213.243.2539 |
| 13 | | |
| 14 | | *Attorneys for Defendant John Muir Health* |